UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**MICHELLE M.,**[1]

     **Plaintiff,**

                               **Case No. 2:21-cv-14624**

  **v.**                          **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

     **Defendant.**

**OPINION AND ORDER**

     This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Michelle M. for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter to the Commissioner with directions to calculate and award benefits to Plaintiff.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

I.      **PROCEDURAL HISTORY**

This case has a lengthy procedural history. On April 11, 2013, Plaintiff protectively filed her application for benefits, alleging that she has been disabled since September 2, 2012. R. 80, 94, 239–47. That application was denied initially and upon reconsideration. R. 125–29, 131–33. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 134. ALJ Dennis O'Leary held a hearing on March 24, 2016, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 36–51. In a decision dated June 27, 2016, ALJ O'Leary concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 2, 2012, Plaintiff's alleged disability onset date, through the date of that decision. R. 98–113. On July 18, 2017, the Appeals Council remanded the matter back to ALJ O'Leary. R. 119–21.

On January 5, 2018, ALJ O'Leary held another hearing, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 52–70. In a decision dated February 13, 2018, ALJ O'Leary again concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 2, 2012, her alleged disability onset date, through December 31, 2017, the date on which Plaintiff was last insured for DIB. R. 13–27 ("2018 decision"). That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 6, 2019. R. 1–7. Plaintiff timely filed an appeal pursuant to 42 U.S.C. § 405(g). R. 1075–76. On June 30, 2020, Untied States District Judge Claire C. Cecchi reversed the 2018 decision and remanded the action for consideration of post-hearing objections to the vocational expert's testimony. R. 1077–80. *Michelle M*[.] *v. Comm'r of Soc. Sec.*, No. 2:19-cv-11427 (D.N.J.).

On October 23, 2020, upon remand, the Appeals Council vacated the 2018 decision and remanded the matter to a different ALJ "for further proceedings consistent with the order of the court." R. 1081–83 (noting further that Plaintiff's "date last insured has advanced and should be confirmed on remand"). On February 5, 2021, ALJ Scott Tirrell ("ALJ Tirrell") held a hearing at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 1055–74. In a decision dated May 24, 2021, ALJ Tirrell concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 2, 2012, Plaintiff's alleged disability onset date, through June 30, 2018,[3] the date on which Plaintiff was last insured for DIB. R. 1026–45 ("the 2021 decision"). Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On January 12, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[4] On February 3, 2022, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]ALJ Tirrell found that Plaintiff's "earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through June 30, 2018 (hereinafter 'the date last insured'). Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." R. 1026.

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

4

social security disability cases ceases to be merely deferential and becomes instead a sham.");
*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,
2016).  The Court has a duty to "review the evidence in its totality" and "take into account
whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting
*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  An ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An

award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.   Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    THE 2021 DECISION AND APPELLATE ISSUES

Plaintiff was 47 years old on June 30, 2018, the date on which she was last insured for DIB. R. 1043. At step one, ALJ Tirrell found that Plaintiff had not engaged in substantial gainful activity between September 2, 2012, her alleged disability onset date, and the date on which she was last insured. R. 1028.

At step two, ALJ Tirrell found that Plaintiff's fibromyalgia and depression were severe impairments. *Id.* The ALJ also found that the following diagnosed impairments were not severe: irritable bowel disease with idiopathic ulcerative coloproctitis; cerebral vascular accident; personal history of colonic polyp; obesity; shoulder and elbow impairment; menorrhagia; and cerebrovascular disease. R. 1028–29.

At step three, ALJ Tirrell found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 1029–31.

8

At step four, ALJ Tirrell found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 1031–43. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a general duty nurse or private duty nurse. R. 1043.

At step five and relying on the testimony of the vocational expert, ALJ Tirrell found that a significant number of jobs—*e.g.*, jobs as an assembler, a bench hand, and a table worker—existed in the national economy and could be performed by Plaintiff. R. 1043–45. ALJ Tirrell therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 2, 2012, her alleged disability onset date, through June 30, 2018, the date on which she was last insured for DIB. R. 1045.

Plaintiff disagrees with ALJ Tirrell's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 20.[5] The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19.

IV.   **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

On April 17, 2014, Plaintiff's treating rheumatologist, Jeanne Pare, M.D., completed a four-page, check-the-box and fill-in-the-blank form entitled, "Fibromyalgia Medical Source

---

[5] Plaintiff initially also argued in her opening brief that the ALJ's decision denying her benefits was constitutionally defective because the Social Security Administration's structure violates the separation of powers. *Plaintiff's Brief*, ECF No. 13, pp. 35–36. However, Plaintiff later withdrew this argument from the Court's consideration. *Plaintiff's Reply Brief*, ECF No. 20, p. 4.

9

Statement." R. 719–22 ("April 2014 medical source statement"). Dr. Pare indicated that she had

treated Plaintiff since February 2005, and she identified Plaintiff's symptoms as follows:

multiple tender points; nonrestorative sleep; chronic fatigue; muscle weakness; irritable bowel

syndrome; numbness and tingling; and chronic fatigue syndrome. R. 719. Dr. Pare also indicated

that emotional factors contribute to the severity of Plaintiff's symptoms and functional

limitations. *Id*. According to Dr. Pare, Plaintiff has constant, chronic pain in her cervical spine,

arms, hands/fingers, legs, and knees/ankles/feet. R. 719–20. Stress, fatigue, and

movement/overuse precipitate her pain. R. 720. Dr. Pare opined that Plaintiff would have the

following functional limitations in a competitive work situation: she could walk one city block

without resting or experiencing severe pain, explaining that, after "walking 20 min on treadmill

[she] had to stay in bed entire day"; she could sit for 45 minutes at a time before needing to get

up; she could stand for 15 minutes at a time before needing to sit down or walk around; she

could sit for a total of about 4 hours in an eight-hour work day; and she could stand/walk for less

than 2 hours in an eight-hour workday. *Id*. Plaintiff would need a job that permits shifting

positions at will from sitting, standing, or walking, and would need 2-minute periods of walking

every 50 minutes throughout the day. *Id*. Plaintiff did not need to use a cane or other assistive

device, nor would she need to elevate her legs with prolonged sitting. R. 721. Dr. Pare also

opined that Plaintiff would need an unscheduled break (to lie down or sit quietly), lasting 15

minutes, every 20 to 30 minutes. *Id*. According to Dr. Pare, Plaintiff could rarely lift less than 10

pounds; rarely twist, stoop (bend), crouch/squat, climb ladders, climb stairs, look down

(sustained flexion of neck), and look up, but she could occasionally turn her head to the right or

left and hold her head in a static position. *Id*. Dr. Pare further opined that Plaintiff could grasp,

turn, and twist objects with her hands 10% of the time in an eight-hour workday; could perform

10

fine manipulation with her fingers 20% of an eight-hour workday; and could use her arms to reach in front of her body and to reach overhead 10% of an eight-hour workday. *Id*. Plaintiff would be off task, because Plaintiff's symptoms would likely be severe enough to interfere with the attention and concentration needed to perform even simple work tasks, 25% or more of a typical workday. R. 722. According to Dr. Pare, Plaintiff was likely to have "good days" and "bad days" and she would likely be absent from work as a result of her impairments or their treatment more than four days per month. *Id*. Finally, Dr. Pare indicated that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation. *Id*.

In October 2016, Dr. Pare responded to interrogatories propounded by Plaintiff's counsel, R. 368–74, indicating that there had been no significant or marked improvement in Plaintiff's fibromyalgia symptoms since Plaintiff's alleged disability onset date of September 2, 2012. R. 371 (noting that Plaintiff "reports [illegible] minor improvement in overall health since 2012[.]" (emphasis in the original)). According to Dr. Pare, Plaintiff's fibromyalgia symptoms wax and wane. *Id*. The doctor agreed with the American College of Rheumatology website statement that most of the medications approved by the FDA for treatment of fibromyalgia are classified as antidepressants. *Id*. Dr. Pare also indicated that the following physical examination findings were consistent with her April 2014 medical source statement: normal peripheral circulation; normal gait; neck normal to palpation; full range of motion of neck; no tenderness in spine; no tenderness in the shoulders; normal elbows, wrists, and hands; some tenderness of the fingers in the hands, but overall full range of motion; full range of motion of the knees; full range of motion of the ankles without tenderness; full and equal motor strength in the upper and lower extremities; normal coordination without deficit; and an ability to perform yoga exercises and to

11

walk. R. 371–74. Dr. Pare explained that the finding of "no apparent discomfort" was consistent with her April 2014 medical source statement, although she also noted that there was "[d]iscomfort with palpation of trigger points[.]" R. 371. Dr. Pare also indicated that findings of normal muscle tone in the neck and spine were inconsistent with her medical source statement because "the [illegible] exam demonstrates mild muscle spasm and trigger points," and that "paraspinal trigger points are present[.]" R. 372. Dr. Pare further indicated that a finding of full range of motion of the spine was also consistent with her statement, commenting that "not all exams examine the ROM of spine[.]" *Id.* According to Dr. Pare, bilateral full and equal grip strength and full range of motion of the hips without tenderness were consistent with her April 2014 medical source statement, although  Dr. Pare also commented that "the patient has trigger points over greater [illegible] regions bilaterally[.]" R. 373. Commenting on Plaintiff's report that she exercised for 20 minutes at a time up to five days a week and performed stretches as part of a yoga program, Dr. Pare explained, "she reported this <u>at one office visit</u>, then reported it was 'too much' and decreased the frequency. The patient has gradually increased her <u>activity level</u> and her <u>exercise tolerance</u> has improved since 2012, [but] she continues to have fatigue and generalized pain." R. 374 (emphasis in the original). According to Dr. Pare, Plaintiff complies with treatment recommendations and is credible. *Id.*

## V.    DISCUSSION

Plaintiff argues, *inter alia*, that ALJ Tirrell erred his evaluation of Dr. Pare's opinion, resulting in a flawed RFC. *Plaintiff's Brief*, ECF No. 13, pp. 18–29. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to

perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the

ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and

explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v.*

*Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34,

42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant

treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the

medical evidence in the record consistent with his responsibilities under the regulations and case

law."). Without this explanation, "the reviewing court cannot tell if significant probative

evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220

F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

     For claims filed before March 27, 2017,[6] "'[a] cardinal principle guiding disability

eligibility determinations is that the ALJ accord treating physicians' reports great weight,

especially when their opinions reflect expert judgment based on a continuing observation of the

patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec*., 794 F.

App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see*

*also Brownawell v. Comm'r of Soc. Sec*., 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ

should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d

at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at

times even controlling weight") (citations omitted). However, "[a] treating source's opinion is

---

[6] As previously noted, Plaintiff's claim was filed on April 11, 2013. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the

14

wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

At step four of the sequential evaluation process, ALJ Tirrell found that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can: occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; never work at unprotected heights or work with machinery involving exposed moving mechanical parts; and occasionally operate a motor vehicle or operate heavy equipment. Further, the claimant can understand, remember, and carry out detailed, but uninvolved instructions in the performance of simple, routine tasks; sustain attention and concentration over an eight-hour workday, with customary breaks, on such tasks; use judgment in making work-related decisions commensurate with this same type of work; and can adapt to changes in routine work settings.

R. 1031. In reaching this determination, ALJ Tirrell, *inter alia*, assigned "little weight" to Dr. Pare's opinion, reasoning as follows:

> Dr. Pare completed a Fibromyalgia Medical Source Statement form, dated April 17, 2014 (Exhibit 16F; see also Exhibit 16E/8-14, response to interrogatories), stating that the claimant experienced symptoms of multiple tender points, nonrestorative sleep, chronic fatigue, muscle weakness, irritable bowel syndrome, numbness and tingling, and chronic fatigue syndrome. Dr. Pare opined that the claimant could sit for 45 minutes at a time for a total of about four hours, and stand/walk for 15 minutes at a time for a total of less than two hours out of an eight-hour workday. She would require a shift [in] positions at will from sitting, standing or walking and would require periods of walking around during an eight-hour workday, every hour for two minutes each time. The claimant would further require unscheduled rest breaks of 15 minutes, at intervals of every two to three hours; could only rarely lift less than 10 pounds; and could rarely twist, stoop, crouch, and climb ladders and stairs. She could rarely look down or look up, and could occasionally turn her head right to left, or hold her head in static position. In an eight-hour workday, it was opined that the claimant could perform bilateral grasping, turning, twisting objects, reaching and overhead reaching, for 10% of the time, and could perform fine manipulations for 20% of the day. The claimant reportedly experienced symptoms severe enough to interfere with her ability to maintain attention and concentration 25% or more of a typical workday, and would

15

be absent from work more than four days per month as a result of her impairments and/or treatments. *I have accorded Dr. Pare's opinions little weight, as the limitations opined are not consistent with Dr. Pare's own treatment records, and are not supported by treatment records from other treating and examining specialists, as discussed further herein. Further, such limitations are not consistent with the claimant's reported activities of daily living, and they are contradicted by other opinions of record, which are given greater weight, as discussed herein.*

R. 1041–42 (emphasis added).

Plaintiff challenges ALJ Tirrell's reasoning, noting, first, that Dr. Pare was the only treating or examining physician to offer functional limitations resulting from Plaintiff's fibromyalgia. *Plaintiff's Brief*, ECF No. 13, p. 24. Therefore, Plaintiff argues, ALJ Tirrell's assertion that Dr. Pare's opinion was "contradicted by other opinions of record, which are given greater weight[,]" R. 1042, lacks any support in the record. *Plaintiff's Brief*, ECF No. 13, p. 25. Plaintiff also notes that her treating neurologist, Marcia Dover, M.D., opined that most of Plaintiff's limitations, which that doctor characterized as debilitating, were related to her fibromyalgia. *Id.* (citing R. 686, 689). Further, Plaintiff points out that ALJ Tirrell assigned only "some weight" to the opinions of the reviewing state agency medical consultants and actually found that Plaintiff was "more limited than assessed in these opinions[.]" *Id.* (citing R. 1042). As to ALJ Tirrell's finding that Dr. Pare's opinion was inconsistent with her own treatment notes, Plaintiff notes that Dr. Pare addressed any alleged inconsistency in her responses to the interrogatories, but that ALJ Tirrell—in violation of 20 C.F.R. § 404.1527—failed to analyze those responses. *Id.* at 26. Plaintiff argues that the medical evidence and Plaintiff's own consistent subjective complaints make clear that nothing in the record contradicted Dr. Pare's findings. *Id.* at 26–27. Moreover, Plaintiff argues, her activities of daily living were not inconsistent with Dr. Pare's opinion, and ALJ Tirrell improperly failed to identify any

contradictory activities, nor did he explain why her activities of daily living were inconsistent with Dr. Pare's opinion. *Id.* at 27–29.

In response, the Acting Commissioner states simply: "In evaluating the opinion, the ALJ noted that I have accorded Dr. Pare's opinions little weight, as the opinion was not consistent with Dr. Pare's own treatment records, and are not supported by treatment records from other treating and examining specialists (Tr. 1042)." *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19, pp. 6–7.

This Court agrees with Plaintiff that ALJ Tirrell erred in his evaluation of Dr. Pare's opinion regarding the functional limitations flowing from Plaintiff's fibromyalgia. Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p. Under SSR 12-2p, a claimant can establish fibromyalgia as a severe, medically determinable impairment by presenting "appropriate medical evidence" that satisfies one of the two sets of criteria for the diagnosis, based on criteria established by the American College of Rheumatology ("ACR"): the 1990 ACR Criteria for the Classification of Fibromyalgia (the "1990 Criteria"),[7] or the 2010 ACR Preliminary Diagnostic Criteria (the "2010 Criteria").[8] *Id.*;

---

[7] Under the 1990 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain in all quadrants of the body that has persisted for at least three months; (2) at least eleven positive tender points bilaterally both above and below the waist on physical examination; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded. Therefore, it is common in cases involving [fibromyalgia] to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs." *Id.*

[8] Under the 2010 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain; (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring

*see also Foley v. Barnhart*, 432 F. Supp.2d 465, 475 (M.D. Pa. 2005) ("These tender points are

called "trigger points." . . . . All points may not be painful at all times in every person. . . . The

pain may vary in intensity according to the time of day, weather, activity level, stress, and sleep

patterns.") (citations omitted).

In the case at bar, ALJ Tirrell found at step two of the sequential evaluation that

Plaintiff's fibromyalgia was severe. R. 1028. As previously detailed, Dr. Pare opined, *inter alia*,

that Plaintiff could sit for 45 minutes at one time; stand/walk for 15 minutes at a time; sit for

about 4 hours and stand/walk for less than two hours in a an eight-hour workday; would need a

job that permits shifting positions at will; would need to take unscheduled breaks every 20 to 30

minutes for 15 minutes throughout the workday; could use her hands to grasp, turn, and twist

objects and her arms to reach in front of her body and overhead only 10% of a workday; could

use her fingers for fine manipulation only 20% of a workday; would be off task 20% of a typical

workday; could not perform even low stress work; and would be absent from work more than 4

days per month. R. 720–22. ALJ Tirrell did not include these limitations in his RFC

determination, and he assigned "little weight" to Dr. Pare's opinion. R. 1031, 1042. Although

ALJ Tirrell found that this physician's opinion was inconsistent with or unsupported by her

treatment records, other opinions of record, and Plaintiff's daily activities, ALJ Tirrell did not

---

condition were excluded[.]" *Id*. Symptoms or signs include "somatic symptoms," including the
following: muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering
problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling,
dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness,
chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's
phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste,
change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity,
hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *Id*. Some co-
occurring conditions may include irritable bowel syndrome, depression, anxiety disorder, chronic
fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint
disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. *Id*.

identify the evidence or the activities upon which he relied in making this finding. R. 1032-42.

For example, Dr. Pare's treatment notes—as well as the treatment notes of other providers—

reflect that the symptoms of Plaintiff's fibromyalgia were treated with medication, trigger point

injections, physical therapy, and exercise/yoga. *Id.* Notably, courts in this Circuit have found that

such conservative treatment is appropriate for fibromyalgia. *See  Rainey v. Saul*, No. CV 19-

1197, 2020 WL 5983070, at *4 (W.D. Pa. Oct. 8, 2020) ("[C]ase law indicates that conservative

treatment is appropriate for fibromyalgia and surgery may not be appropriate or required.");

*Wolfe v. Saul*, No. CV 19-5005, 2020 WL 3288384, at *9 n.9 (E.D. Pa. June 18, 2020) ("[C]ourts

have held that 'conservative treatment is appropriate for fibromyalgia. Indeed, massage, exercise,

anti-inflammatories, trigger-point injections and other approaches may be appropriate treatments

for fibromyalgia and that surgery may not be appropriate or required.'") (quoting *Payne v.

Berryhill*, 2019 WL 1082488, at *2 (W.D. Pa. Mar. 7, 2019)); *Rolon v. Berryhill*, No. 3:18-CV-

0229, 2018 WL 4778074, at *9 (M.D. Pa. Oct. 3, 2018) (finding that the claimant's ability to

engage in yoga "provides no basis for the inconsistency. An individual can practice yoga at many

levels and poses can be modified or adapted to meet the needs of the student, including those

with disabilities and chronic health conditions"). Dr. Pare's treatment records also refer to

multiple tender points and tenderness upon palpation. R. 1033, 1035, 1041. While the treatment

records of Dr. Pare and other providers also reflect largely normal physical examination findings,

including evidence of full range of motion and strength in the upper and lower extremities,

normal muscle tone, full grip strength, and/or normal gait, R. 1033–39, 1041, "it is error for an

ALJ to rely on the lack of objective evidence to reject a treating physician's opinion in a

disability case involving a diagnosis of fibromyalgia due to the nature of the disease." *Henderson

v. Astrue*, 887 F. Supp. 2d 617, 636 (W.D. Pa. 2012) (stating further that the ALJ "erred by

failing to address the unique circumstances presented by a claimant alleging disability based on a diagnosis of fibromyalgia") (citations omitted); *see also Foley*, 432 F. Supp.2d at 475 (noting that the ALJ improperly discounted a physician's assessment of the claimant's condition on the ground that "it was not supported by any independent findings and observations" and stating that "[t]he problem with looking for independent findings and observations is that fibromyalgia is a disease which is notable for its lack of objective diagnostic techniques") (cleaned up); *id.* at 476 ("[I]n a disability determination involving fibromyalgia, it is error to require objective findings when the disease itself eludes such measurement.") (citations omitted). Moreover, as detailed above, Dr. Pare explained in her answers to interrogatories that normal examination findings were nevertheless consistent with her opinion and she explained any apparent inconsistency with her opinion. R. 371–74. It is significant that the ALJ did not explicitly discuss this evidence.

Although ALJ Tirrell did not specifically identify which of Plaintiff's activities of daily living were inconsistent with Dr. Pare's opinion, R. 1042, the ALJ noted elsewhere in his opinion that Plaintiff reported caring for her children and household, albeit with limitations:

> In her function report, she described a typical day as supervising her son with getting ready for school, driving him to the bus stop, returning home and preparing her other son for school, and then driving him to school. She then naps for up to two hours, showers, and count change, but her children up from school, both at different times. In addition, she prepares simple meals, but has difficulties lifting pots and pans, and helps her children with their homework. She reported problems with sleeping, daily fatigue, and problems dressing and performing personal care. However, she reported that she was able to perform light household chores. She indicted that she went outside on a daily basis and that she was able to go out alone. She is able [to] travel by driving or riding in a car. She shopped with assistance, two times a week, for up to 40 minutes each time. She is able to pay bills, handle a savings account and count change, but her ability to handle money had changed because she was late with paying her rent on two occasions. She socialized with others on a daily basis by either using social media, texting or talking on the phone. She reported physical limitations with lifting, squatting, walking, sitting, climbing stairs, using her hands, bending, standing, reaching, kneeling, completing tasks and talking. She was only able to lift up to five pounds, could only walk about 1/8 of a mile before she needed to stop for five to ten minutes, and was only able to pay

attention for up to 15 minutes at a time, but it depended upon the situation. She reported that she was able to finish things she started and was able to follow both written and spoken instructions fairly well (Exhibit 3E).

In her July 2014 Disability Report Appeal form, the claimant reported that she had increased headaches, problems with walking, difficulties climbing stairs and that her left leg gave out[.] She further reported that her parents did all her laundry, cooking and grocery shopping, and drove her to medical appointments (Exhibit 4E). In a more recent Function Report, the claimant reported that she was unable to finish things she started, and had problems following both written and spoken instructions (Exhibit 5E). She also reported experiencing neuropathy in her hands and feet with associated worsening numbness and tingling, that she frequently dropped things, was unable to feel her feet, had tripped numerous times throughout the day, and had fallen a couple of times (Exhibit 6E).

R. 1032. The ALJ's summary of Plaintiff's activities of daily living would seem to indicate that Plaintiff can perform certain daily activities, but that her activities are limited in nature, last for a limited period of time, and are performed only with assistance or modification. Without at least some further explanation, the Court cannot conclude that Plaintiff's activities of daily living provide substantial support for ALJ Tirrell's assigning "little weight" to Dr. Pare's opinion. *Cf. Blair v. Colvin*, No. 3:15-CV-1974, 2016 WL 1089223, at *15 (M.D. Pa. Mar. 21, 2016) ("The ALJ's overstatement of Plaintiff's activities of daily living, without an explanation for the elimination of the qualifying aspects of Plaintiff's testimony and statements, renders his reliance on her activities of daily living problematic."); *Sanford v. Comm'r of Soc. Sec*., No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

ALJ Tirrell also found that Dr. Pare's opined functional limitations "are contradicted by other opinions of record, which are given greater weight, as discussed herein." R. 1041. Again, however, ALJ Tirrell did not identify which opinions actually contradicted Dr. Pare's opinion. *Id*. It is true that ALJ Tirrell assigned "great weight" to the opinions of Victoria Miller, Ph.D.,

and Avanente Tamagnini, Ph.D., but these examiners conducted mental status examinations, not physical examinations based on Plaintiff's fibromyalgia. R. 683–85, 701–03. Moreover, ALJ Tirrell found that these experts opined that Plaintiff was capable of sustained mental activity or concentration, R. 1042 (Plaintiff "*was able to adequately maintain mentation* and was able to manage her own funds without the need for support" (emphasis added)), although Dr. Miller actually opined that Plaintiff "has *adequate mentation* and can manage her own funds without the need for support[,]" R. 685 (emphasis added), and Dr. Tamagnini opined only that Plaintiff "is able to manage her own funds," R. 703. In other words, ALJ Tirrell overstated or mischaracterized these examiners' findings. Furthermore, and as previously noted, although ALJ Tirrell assigned "some weight" to the opinions of the reviewing state agency medical consultants (and the reviewing state agency psychological consultants), he actually found that "the claimant is *more limited* than assessed in these opinions, as discussed herein." R. 1042 (emphasis added). Under these circumstances, it is not apparent to the Court how these opinions contradict that of Dr. Pare. Finally, and as Plaintiff highlights, Dr. Dover—another of Plaintiff's treating physicians—opined that "most of pt's current limitations relate to fibromyalgia sxs which are quite debilitating[,]" R. 686, and that Plaintiff's fibromyalgia "is her greatest functional limitation." R. 689. ALJ Tirrell assigned "little weight" to Dr. Dover's assessment on the ground that the doctor "provided little in the way of specific limitations for work-related activities." R. 1041. However, nothing in Dr. Dover's opinion contradicts Dr. Pare's opinion.

Moreover, ALJ Tirrell's error in assessing Dr. Pare's opinion takes on greater significance when one considers that the vocational expert, upon whose testimony ALJ Tirrell relied, R. 1043–45, was asked to assume a claimant who "could sit, stand, and walk for a combined total of up to six hours in an eight-hour workday, or that the individual would be off

task 15% or more of the workday, or that the individual would be absent two or more times per month on average[.]" R. 1069. The vocational expert responded that such limitations would be work-preclusive. R. 1069–70 ("Certainly that sit/stand/walk ratio is less than the full range of full-time work, and thereby, no jobs, And either being off task 15% or more or absent two days a month or more is also work preclusive, and those two opinions are based both upon my professional experience as well as Department of Labor studies. So no jobs in -- in any three circumstances."). The vocational expert further testified that "off task is tolerated up to in and around 14% of the workday, and becomes work preclusive when it rises to and exceeds 15%. And one day a month absence is fairly acceptable. Two or more, work preclusive." R. 1070.

In short, the Court concludes that ALJ Tirrell's decision lack substantial support in the record and that the Commissioner's decision must be reversed.

Having reached that conclusion, the Court must now decide whether to remand for further administrative proceedings or to reverse with the direction to award benefits. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357–58 (3d Cir. 2008) (citing *Podedworny*, 745 F.2d at 221). "The decision to direct the . . . award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22 (citations omitted). "Such a decision is especially appropriate when the disability determination process has been delayed due to factors beyond the claimant's control." *Brownawell*, 554 F.3d at 358 (citing *Podedworny*, 745 F.2d at 221–22); *see also Morales*, 225 F.3d at 320.

In the present case, the record reflects substantial evidence establishing that Plaintiff is entitled to an award of benefits. As detailed above, Dr. Pare identified Plaintiff's specific

functional limitations that, if accepted, would be work-preclusive. This Court has already explained that ALJ Tirrell failed to identify any opinion evidence or other record evidence that contradicts Dr. Pare's opinion. Moreover, as previously discussed, Plaintiff's claim was filed before March 27, 2017, which entitles Dr. Pare's treating opinion to "great weight," especially where, as here, that opinion reflects that expert's treatment of Plaintiff's condition over an extended period of time. *See Nazario*, 794 F. App'x at 209.

In addition, Plaintiff has waited more than ten years for a proper determination of her DIB claim, which was filed in April 2013 and which alleged a disability onset date of September 2, 2012. Since the date of that filing, Plaintiff has undergone three administrative hearings before two different ALJs, has pursued two petitions to the Appeals Council, and has secured a previous remand order from this Court. *See Morales*, 225 F.3d at 320 ("Morales has had two hearings before an ALJ followed by two petitions to the appeals council, two appeals to the district court, and the present appeal to the court of appeals. *The disability determination has already taken ten years and the record is unlikely to change*.") (emphasis added).

Accordingly, in light of the fully-developed record described above, the lengthy delay in a reaching a final resolution of Plaintiff's claim for benefits, and the determination that the Commissioner's most recent decision denying benefits lacks substantial support, this Court concludes that remand of the matter to the Commissioner, with directions for an award of benefits, is appropriate. *See Brownawell*, 554 F.3d at 357–58; *Morales*, 225 F.3d at 320; *Podedworny*, 745 F.2d at 221–22; *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019) ("[C]ourts have found that administrative delays of five years or more in cases involving one or two prior remands have constituted excessive delays triggering consideration of an award of benefits in lieu of a remand.") (collecting cases).

## VI.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for the calculation and award of benefits.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 19, 2023                                      _____*s/Norah McCann King*_____
                                                                               NORAH McCANN KING
                                                                     UNITED STATES MAGISTRATE JUDGE